## ESTATE OF DUNCAN McBRYDE.

APPEAL FROM JUDD, C.J.

HEARING, MARCH 15, 1892.    DECISION, APRIL 26, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

Executors may not turn over the performance of their trust to a business firm, and return the accounts of the latter into Court as their own executors' accounts; nor may they have executors' commissions on such accounts.   They should decline the trust or perform it.

The will devised the income of the estate to the widow for life.   Money which was due the testator in his lifetime, upon being received by the estate, is not income, but capital, and must be accounted for as a part of the reversion.

Money received by the executors on account of a sale of an interest in the estate, made up of land, chattels real, water and pasture franchises, and including the use of tools and working animals, is not income, but capital, and must be accounted for as part of the reversion.

The management of the income of the estate, after the same has vested in the widow, is no part of an executor's duties, and commissions may not be charged therefor by an executor.

DECISION OF JUDD, C.J., APPEALED FROM.

This is a petition for allowance of final accounts and discharge of the executors and administrator.   The accounts were referred to a master, who reports no commissions due, on the following facts:

Duncan McBryde died May 16th, 1878, leaving a will by which his widow, E. A. McBryde, is entitled to all the income of the estate during life, with remainder to testator's children. The executors of said will are E. A. McBryde, H. A. Widemann (by appointment October 6, 1878, after the probate of the will), and Alexander McBryde, who became executor May 2d, 1882, under the will, upon becoming of age.

The estate, at the death of Mr. McBryde (May 16th, 1878) was a cattle ranch, consisting of the land of Wahiawa and the leaseholds of Kalaheo, Lawai and Eleele, and certain real estate in Scotland. There is no inventory of any personal property, and no question concerning this arises.

The only liability which appears to have been outstanding against the estate was a debt due Messrs. T. H. Davies & Co., of $2,614, for advances made to Mr. McBryde during his lifetime, for planting cane. Messrs. Davies & Co. continued to make advances up to February, 1879, amounting in all to $11,-498.38, at which date Mrs. McBryde personally assumed and paid the said sum due Davies & Co., and Mr. Dreier bought one-half interest in the plantation for $21,000, which was paid to Messrs. Schaefer & Co. and placed to Mrs. McBryde's private account.

In 1884 Mrs. McBryde, in her name, and Mr. Dreier purchased the land of Eleele for $5,500, Mrs. McBryde's one-half share of the purchase money being paid from the profits of the plantation. In 1886, Mrs. McBryde, in her own name, purchased the land of Lawai for $45,500; the purchase price was paid from moneys held to her personal credit by Messrs. Schaefer & Co., $28,500, and by Messrs. Davies & Co., $17,000.

The ranch has been managed by Alexander McBryde, who has received a salary therefor. All produce of the ranch has been consigned to Davies & Co., and the proceeds placed to Mrs. McBryde's private account. The plantation has been managed by Mr. Dreier, the half owner, all produce of the plantation consigned to Schaefer & Co., and one-half of the profits placed to Mrs. McBryde's private account. Such gross receipts from the ranch have amounted to $162,531. Mrs. McBryde's one-half share of the net profits of the plantation amount to $158,-914. The executors have never handled any of the receipts or expenditures from either the ranch or plantation. The services of Messrs. Davies & Co. and Messrs. Schaefer & Co. have been compensated for by Mrs. McBryde individually.

The purchase of the two lands above named, and the investment of some $20,000 belonging to Mrs. McBryde, were ne-

gotiated by Mr. Widemann, for which services he was paid the respective sums of $250 and $1,000 from her private moneys. Other investments have been made by Mrs. McBryde of her moneys, without consulting Mr. Widemann.

The accounts submitted as the executors' accounts consist of condensed transcripts of the accounts of Messrs. Davies & Co. and Messrs. Schaefer & Co. with Mrs. McBryde.

Commissions are claimed by Mr. Widemann upon the whole of the receipts of Davies & Co. and Schaefer & Co., as above set forth. The commissions at the statutory rate on the receipts and disbursements of the ranch and plantation would amount to $15,293.70. The statute allows commissions to executors, administrators and guardians for receiving and paying out moneys, "ten cents for every dollar up to and not exceeding $1,000; seven cents for every dollar over $1,000, up to and not exceeding $5,000; five cents for every dollar over $5,000, and such additional allowance for their actual expenses as the court or judge shall deem reasonable." Section 1281, Civil Code, Comp. Laws, p. 421.

The widow was entitled to the entire income of the estate of the deceased during her life, which was devised directly to her, and she received it from the agents of the cattle ranch and the sugar plantation, who kept the accounts of the respective enterprises.

There is no doubt that the services of Mr. Widemann, in negotiating the sale of half the plantation interest and the contract of copartnership with Mr. Dreier, were very valuable to Mrs. McBryde, as also were his services in the purchase of Eleele and Lawai. These enterprises have turned out well. But these were services rendered as an attorney to the widow, and not as an administrator of the estate.

It is true that the partnership agreement with Mr. Dreier is signed by Mr. Widemann, as administrator, but it does not purport to bind him as such, and distinctly repudiates his personal liability. I doubt very much if it binds the reversioners of the estate after the life interest of the widow has expired.

After thoughtful consideration of this matter, I feel obliged to hold that the executors and administrator are not entitled to commissions, except on the $6,646.36 collected of Mr. Cleghorn, a debt incurred during the lifetime of the testator.

On a careful perusal of the will, I find that there may be duties still to perform by the executors and administrator, and so they cannot be finally discharged. The accounts submitted, so far as they embrace transactions germain to the estate, are approved.

### Opinion of the Full Court, by Dole, J.

Although this is an application for the examination and allowance of executor's accounts, no such accounts are filed. They have kept no accounts of their transactions, but have filed, instead, a resumé of the accounts of T. H. Davies & Co. with the ranch portion of the estate, and of F. A. Schaefer & Co. with Mrs. McBryde, the widow, as a partner in the Eleele plantation. These are not executors' accounts, and cannot be accepted for them. Neither do they represent the full money transactions appertaining to the business of the estate; the account taken from the books of T. H. Davies & Co. represents receipts alone, and that from the books of F. A. Schaefer & Co. is the private account of the firm with the widow, in relation to her one-half interest in the Eleele plantation.

The failure to file an inventory of the property was a serious neglect of duty by the executors, especially as a large portion of the estate consisted of live stock.

In 1878, when John N. Wright, one of the executors, resigned his trust, he reported payments amounting to over $1,300, and, generally, that his services to the estate had been at considerable loss of time and convenience, as well as personal expense, and requested the Court to award such compensation as it considered suitable under the circumstances. The Court approved the account and discharged Mr. Wright from further liability, but reserved the adjustment of his compensation to such time as his successor, Mr. Widemann, should file "a regular executors' account." Such "regular executors' account" never having

been filed, Mr. Wright's compensation has never been adjusted; it should be disposed of in these proceedings. It appears to have been the intention or expectation of Judge Harris, who was the Probate Judge in the proceedings at that time, that the "regular executors' account" to be filed by Mr. Widemann should include Mr. Wright's accounts in due form, they having been presented somewhat irregularly by the latter, and that then his compensation would be decided on. However this may be, it is due Mr. Wright that he should not be kept waiting any longer for whatever the estate may be found to owe him.

The agreement creating the partnership between the widow and Mr. Widemann, as executors, on the one part, and Mr. Dreier on the other, was distinctly a sale to Mr. Dreier of a part of the estate, for which he paid $21,000, of which $20,000 was placed to the credit of the widow's private account with F. A. Schaefer & Co. The balance of $1,000 was placed to the credit of the ranch account with T. H. Davies & Co.

The executors had the right to make this agreement and effect this sale with Dreier, but the consideration of $21,000 was not income of the estate which vested in the widow, but capital arising from a sale of a part of the estate, and must be accounted for by them as a part of the estate, and as this fund arose through the administration of the executors, they are entitled to commissions upon it when they have accounted for it. Inasmuch as the widow had advanced of her private funds $11,498.38 towards this enterprise before the partnership was effected, she is entitled to so much out of the $21,000 received for the sale of the half interest in the plantation to Dreier.

We find from the Master's Report that T. H. Davies & Co. had collected from A. S. Cleghorn & Co. $6,646.36, which the Master reports to be a part of a debt owed by the latter firm to the deceased in his lifetime. This amount, then, is a part of the estate, and not income, to which the widow is entitled under the will ; and as such the executors should have accounted for it. It seems to have disappeared in the accounts of the ranch, having been treated as income. This amount must be charged

against the widow in favor of the estate, and whereas the executors, as such, have had no hand in its collection or disposition, they are not now entitled to commissions in regard to it.

In regard to the other large totals of money reported, amounting to $154,885.07, received by T. H. Davies & Co. on account of the ranch, and $120,742.62 received by F. A. Schaefer & Co. on account of the widow from the profits of the plantation, we consider that the latter sum is entirely outside of our jurisdiction in these proceedings, and consequently outside of the authority of the executors, it being the fruit of a private enterprise of the widow carried on with her own private resources except as to the $21,000 received from Dreier, which must be regarded, as stated above, as a loan from the estate to her. If Mr. Widemann has rendered services in this enterprise beyond the inception of it, or has handled these funds, he has done so solely as the agent of the widow, and not as an executor.

The $154,885.07, received by T. H. Davies & Co. from the ranch business, is on a different footing from the fund received from the partnership. While the will devises to the widow the income of the estate for her life, it authorizes the executors to sell any portion of the estate whenever they shall, in their discretion, deem it desirable for the sake of reinvestment or for the support of the widow and children. It is not clear to us, under the provisions of the will, whether the widow is entitled to the possession of the estate, or whether the management devolves upon the executors ; and the settlement of this question is not now important. For if the widow was entitled to the possession, there would be no commissions on account of the income, and if the executors were authorized to take possession and manage the property they have not done so, but have allowed a business firm to attend to the financial management and have themselves handled no part of these receipts as executors. T. H. Davies & Co. have done the work and have doubtless charged and collected their compensation therefor. The executors, therefore, are not entitled to commissions, even if they had the right to receive the moneys. We do not go so far as to hold that trustees of this character may not hire clerks or business agents to

assist in carrying on the business of the trust. This may be done in some circumstances, and often is inevitable, but where trustees abandon the whole management of the trust to others they may not claim commissions. This rule applies equally to a trustee who leaves the execution of a trust to his co-trustee. Persons called to be trustees should either decline the trust or execute it themselves. *Mason vs. Roosevelt,* 5 Johns. Ch., 540.

We therefore refuse the prayer of the petition on the showing made, and require the executors to furnish an account in accordance herewith.

*F. M. Hatch,* for H. A. Widemann, Executor.

*Thurston & Frear,* for devisees.