*F. M. Hatch*, for the petitioner.

*C. W. Ashford*, for the bankrupt.

---

## IN THE MATTER OF THE ESTATE OF J. F. O. BANNING, Deceased.

APPEAL FROM DECISION OF CIRCUIT JUDGE COOPER, SITTING IN PROBATE.

HEARING, APRIL 6, 1894.     DECISION, APRIL 25, 1894.

JUDD, C.J., BICKERTON, J., AND PAUL NEUMANN, ESQ., SITTING IN PLACE OF MR. JUSTICE FREAR, WHO WAS DISQUALIFIED.

Where a trust is created by will wherein the executors were required to invest the estate and pay the income over to beneficiaries, the administrator with the will annexed, appointed in place of the executors on their resignation, has the same duties, powers and responsibilities as the executors.

The statute (Compiled Laws, p. 421) in force at the time the first account was presented for approval allowed commissions to the administrator "for receiving and paying out moneys." The admin-

istrator received, i. e. collected the assets of the testator and invested them. Held, this was such a receiving and paying out of moneys as entitles the administrator to the commissions according to the said statute.

Annual accounts submitted to the Probate Court before the final account upon the termination of the trust, may be re-examined for the purpose of correcting errors.

A trustee clothed with discretionary powers cannot delegate this discretion to an agent. If he does so he becomes responsible for any loss that may result therefrom.

A receipt given by a beneficiary for his share of the estate does not estop him from seasonably rejecting a security taken by him when the defect of title of the property secured was overlooked and unknown to him at the time.

The administrator took a chattel mortgage upon a leasehold dependent upon a life estate, not having discovered this defect, which could readily have been ascertained by enquiry. Held this was a want of diligence on the part of the administrator, and he is answerable for any loss arising therefrom.

Held, Bickerton, J., dissenting, that an offer by an administrator to pay a distributive share in money, which was not accepted by the beneficiary, but who elected to receive the investments does not relieve the administrator from liability caused by a defective title in the investment selected.

No statute exists in this country limiting the class of securities in which trust funds may be invested. The Court cannot undertake to direct what securities only a trustee may invest in so as to exonerate him in case of loss. This would trench upon legislative functions.

It is required of a trustee in making investments that he exercise that prudence which is used by men in the investment of their own funds, having regard not only to the interest to be made, but to the security of the principal and to the permanency of the investment. He must act with honesty, prudence, faithfulness and with a sound discretion.

OPINION OF THE COURT, BY PAUL NEUMANN, ESQ.

This Court adopts the statement of the case made by Judge Cooper which is substantially as follows:

On the 26th September, 1886, temporary letters of administration were granted to W. F. Allen of the estate of J. F. O. Banning, deceased, and on the 20th of October an inventory was filed by him showing the following assets.

Credit on books of Ed. Hoffschlaeger & Co., Sep-
    tember 30, 1886...................... $139,742 35
Collected on account of notes..... ...........   12,424 65
Notes secured.............................   30,000 00
Real estate.......................... ...........      250 00
                                                 

     Total........................... ........ ...... $182,417 00

On the 3rd of November, 1886, Mr. W. F. Allen was appointed administrator with the will annexed, the devisees being the widow Mrs. Clara H. Banning and the son, Bernhardt Rudolph Banning, a minor at the time when the will went into effect. The will ordained among other provisions that the executors should invest the proceeds of the estate for the benefit of the devisees, directing that the investment of the estate was to be made "in good securities with lower rates of interest in preference to high rates with corresponding risks." The estate was to be distributed as follows: One-half thereof to Bernhardt Rudolph upon his attaining the age of twenty-five years, the interest and gains of the other half to Mrs. Banning for life and after her death to Bernhardt Rudolph; Mrs. Banning on the 17th of April, 1887, elected to accept the benefit of the provisions of the will in lieu of dower. On November 11th, 1887, Allen filed his first account with the following showing:

Receipts. .............................. ...... $155,138 03

Expenditures:

Mrs. Banning.................... ..... ..$ 7,978 57
Administrator's commissions........   7,886 90
Costs and legal expenses...........      281 80
Sundry bills.... ................ .      134 39
                                     

     Total.......................      $ 16,281 66

Leaving a balance of ......................   138,856 37
Investment account .. .... ......... .......   135,500 00
                            

                               $    3,356 37

The difference between the assets in the inventory and the actual receipts being accounted for by certain losses which are not in dispute. This account was settled by the late Mr. Justice Preston on February 22d, 1888, Mr. B. R. Banning, who had then attained the age of majority, appearing in person at the hearing, and Mrs. Clara H. Banning having had actual notice of the time and place of hearing. At that time the provisions of the statute regarding fees of executors, administrators, etc., were as follows, (Compiled Laws, p. 421) :  "For receiving and paying out moneys, ten cents for every dollar up to and not exceeding one thousand dollars ; seven cents for every dollar over one thousand up to and not exceeding five thousand dollars ; five cents for every dollar over five thousand dollars." The statute relating to the same subject enacted in Chapter XCVIII., 1892, does not apply to that account and the commissions therein charged, were it so applied, would be retroactive.   The words of the statute are as follows :

" Executors, administrators and guardians shall be allowed the following commissions upon all moneys received and accounted for by them, that is to say :

" Upon all moneys received representing the estate at the time of the institution of the trust, such as cash in hand and moneys realized from securities, investments, and from sales of real estate and personal property other than interest, rents, dividends and other profits coming due after the inception of the trust, two and one-half per centum.

" Upon the final payment thereof or any part thereof, two and one-half per centum.

" Provided, however, that no commissions shall be allowed as for final payments of such moneys except upon amounts actually expended and upon balances paid into court or to the parties thereto entitled, upon the final settlement of the services for which such executors, administrators or guardians shall have been appointed and qualified.

" Upon all moneys received in the nature of revenue or income of the estate, such as rents, interest and general

profits, ten per centum for the first thousand dollars, seven per centum for the next four thousand dollars, and five per centum for all amounts over and above the first five thousand dollars.

"Such commissions of ten, seven and five per centum, to be allowed upon each accounting when made, but not oftener than once a year."

"Section 2.   The provisions of this Act shall apply as well to all future accounting in existing trust estates as to new trusts."

The conclusion of the Circuit Judge that the commissions allowed were not due at the time of hearing on the 2nd of February, 1888, and did not become due until the law of 1892 went into effect, cannot be supported.   The investment of the funds held by the administrator were a disbursement under the terms of the will and the commissions were at that time properly allowed under the statute thus in force.   If any error of computation or otherwise existed, it could unquestionably be corrected at any time, but such error does not appear.

The claim of the administrator to commissions upon the share paid or delivered to B. R. Banning cannot be allowed. Under the settlement of his account by Mr. Justice Preston, he has been allowed all the compensation to which he is entitled except such as the law in force before the statute of 1892 and thereafter, the statute of 1892, allows him for collections and payments over of reserve, increase, gain, etc., which is computable as follows : five per centum upon all such collections and payments prior to the time when the statute of 1892 went into effect, and thereafter ten per centum upon the first five thousand dollars ; seven per centum upon the next four thousand dollars ; and five per centum upon the remainder up to the closing of his accounts.

Irrespective of the fact that the decision in the Long minors estate, 7th Haw. 368, was rendered subsequently to the allowance of commissions made by Mr. Justice Preston in the

Banning matter, nothing settled in the case cited conflicts with the view expressed herein.

The court there holds that the commissions cannot be divided so as to be apportioned part to receipts and part to disbursements. In the present matter Mr. Preston appears to have taken the reasonable view, that where a trust directing the investment of the funds of the estate in a specific manner follows the administration, the showing that the funds of the estate have been invested closes the administration *pro tanto* and the administrator is entitled to commissions on the amount so invested.

We now continue the statement of facts from Judge Cooper's decision:

"The administrator filed his second account November 9th, 1888, third account December 2d, 1889, fourth account November 3rd, 1891; these accounts were examined and approved in due course. There was no appearance on the part of the present contestants at any of these hearings. At the time the administrator filed his third account he made the suggestion that it be considered his final account, but it appearing that there were outstanding debts that might be collected, the court declined to allow his discharge. On January 10th, 1893, the administrator filed his fifth account and with it his petition for discharge. The matter came on for hearing on February 15th, 1893, there being present the administrator and Rudolph Banning. The accounts show the total amount of investments to be $144,999.04; but the administrator reported a loss of $2200 upon the bonds of the Union Iron Works Company of Honolulu, this sum being deducted left a balance of $142,799.04. The accounts were examined and Mr. Banning expressed his satisfaction with them, and that he was ready to receipt for his share of the estate assets; they were approved and the assets of the estate ordered distributed equally between Mrs. Banning and Rudolph, and the administrator ordered discharged upon his filing the receipts. The receipts were filed forthwith, and were in the following form:

" ' Received, Honolulu, February 15th, 1893, from Wm. F. Allen, administrator of the estate of J. F. O. Banning, deceased, my one-half of the estate as follows: In bonds, $34,400; notes secured, $36,675; cash, $324.54; total, $71,399.54; amounting to seventy-one thousand three hundred and ninety-nine and 54-100 dollars. Signed, B. R. Banning.'

"The receipt of Mrs. Banning's share was in the same form and for the same amounts, but signed by W. F. Allen as her attorney in fact.

" These receipts do not show the actual basis of settlement so far as the division of securities is concerned, but a manual separation of the securities took place immediately after the receipts were filed, in accordance with a previously arranged schedule, Mr. Banning making his own selection, he receiving $40,000 in bonds and $28,125 in notes, making a total of $68,125. The allotment to Mrs. Banning was $27,000 in bonds and $45,255 in notes, total $72,255. The difference between these amounts was adjusted between the parties, but in what way is not quite clear.

" Mr. Banning gave Mr. Allen a power of attorney to act for him in the care of his half of the estate, which was dated February 28th, 1893. Mr. Banning left for the coast March 29th, 1893, intending to be gone until the fall of that year, but returned by the same steamer, because he found that his mother was dissatisfied with the securities allotted to her, and after his arrival in Honolulu he took steps towards the institution of these proceedings.

"The original petition to vacate the order discharging the administrator was filed May 28th, 1893, for which there was substituted an amended petition filed June 19th, 1893. The amended petition alleged that the order discharging the administrator was made under a mistake of fact as to the terms of the will of the deceased, shared alike by the judge and the administrator; and that the administrator had not filed proper accounts, and that the securities in which the funds of the estate were invested were speculative, uncertain,

shifting and unsafe, and that the receipts which had been filed for the distributive shares were given "under a misapprehension of material facts and conditions, and in consequence of concealment of material facts and conditions and undue influence exercised" by the administrator. After the hearing, a decision was rendered revoking the order of discharge, and requiring the administrator to file his accounts for approval as of the 15th day of February, 1893. Two accounts, the sixth and seventh, were filed on the 12th of August, 1893; the sixth account included the transaction of the administrator up to the 10th of January, 1893. This account was referred to F. Wundenberg as master on the 4th of September, 1893. The seventh account contained a statement of the affairs of the estate up to the 31st day of July, 1893.

"On the 17th of August, 1893, Mrs. Banning filed a petition for the removal of Mr. Allen as administrator, and for the appointment of J. A. Magoon in his place, setting forth as reasons the facts alleged in the amended petition for the revocation of the order discharging the administrator; and also that there was no bond on file conditioned for the execution and performance of said trust. The motion was heard on the 4th of September, 1893, and denied on the ground that no cause had been shown for the removal of Mr. Allen. A new bond was filed on the 6th day of September, 1893, with approved sureties.

"The master's report was filed on October 1st, 1893, and the beneficiaries filed a motin to confirm the master's report so far as the items of commission were concerned; and also to have the master report upon the propriety of the investments. A decision was rendered, by which the rule was laid down, governing the allowance of commissions, but the motion to refer to the master was denied on the ground that the subject of the enquiry was more properly for the court.

"The matter is now before the Court on the motion of the beneficiaries to disallow the accounts of the administrator so far as certain investments are concerned;

and also upon the motion of B. R. Banning to disallow the accounts and to charge the administrator with the whole estate, including the shares accepted by him when the administrator was discharged by the previous order. In support of his motion Mr. Banning alleges: "That the securities represented by his receipt were not of equivalent value to the sum of $71,399.54, nor anywhere near said sum, as said Allen then well knew," and "that said receipt was signed by him under misapprehension and ignorance of material facts and conditions affecting said receipts and securities supposed to be represented thereby, induced and resulted from intentional repression and in consequence of the intention and culpable failure and neglect on the part of Mr. Allen to properly advise him before signing the receipt " of the true condition and character of the investments, and many other allegations of like tenor and effect."

Mr. Allen had a dual function to perform, one, as administrator, the other as trustee of the estate, the investment and management of which for the benefit of the legatees were confided to him. As to the first, aside from the question of the allowance of the commissions claimed, nothing more need be considered; as to the latter, two questions are presented, one, did the trustee properly and faithfully fulfill his duties? The other, did the settlement with B. R. Banning affect his obligation as such trustee. The relations of Mr. Allen to the beneficiaries were such as to require him to act *cum uberrima fide.* The trustee was obliged to exercise that prudence which is used by men in the investment of their own funds, having regard not only to the interest to be made, but to the security of the principal and to the permanency of the investment. This is the doctrine stated by Mr. Justice Gray in the case of *Lamar vs. Micron,* 112 U. S. Rep., 468. Aside, however, from this eminent authority, the will in express terms directs the investment of the estate to be made in good securities, with lower rates of interest, in preference to high rates with corresponding risks.

No statutory provision limiting the investment of trust

APRIL, 1894.

funds to specific securities exists in the Hawaiian Islands, and this Court cannot go further than to hold that the trustee must act with honesty, prudence, faithfulness, and exercise a sound discretion in placing trust funds for investment. To direct what securities and what only may be accepted by trustees, so that they would be exonerated in the event of loss, trenches upon legislative function. The discretion confided in such matters to the trustee is one that is founded upon sound reasoning and conformity to established business principles, and the court can in no case hold a trustee blameless who has exercised his discretion otherwise. With a discretion so used, coupled with diligence and absolute good faith, the trustee is armed against liability for losses to which the most prudent investment may be subject.

*Harvard College vs. Amory*, 9 Pick., 465.

*Lovell vs. Minot*, 20 id., 119.

*Brown vs. French*, 125 Mass., 415.

In the case before the Court the various investments are enumerated. Due consideration of all the circumstances surrounding these transactions shows that the trustee has acted prudently and with perfect good faith, and in all transactions, except one hereafter mentioned, has acted diligently in making the investment of the trust funds; it shows further that he has, in making them, concientiously followed the directions of the testator.

Neither our law nor the directions in the will nor the exercise of a sound discretion forbade the making of the investments made by Mr. Allen. They were in the view of this court such that, had the necessity existed for their approval by the Probate Court, no good reason could have been advanced for withholding such approval at the time and under the circumstances under which they were made.

The Fai Kee chattel mortgage is the exception above alluded to. In lending the trust funds it was the duty of the trustee to ascertain the status of the mortgagor's leasehold interest, which was confessedly neglected, and, while in all probability no loss to the trust estate may grow out of it, the

court must hold the trustee answerable for any loss which may arise from that investment.

The administrator has made his investments not without authority of law nor in violation of the directions in the will. The fact that he was not named executor, but was appointed by reason of the renunciation of the one and refusal to accept the trust of the other executor, does not alter the situation. The administrator stands in every respect in the same position as the executors would have stood. He has the same duties, powers, rights and obligations which would have vested in or fallen upon the executors, had they chosen to act. Being, therefore, of the opinion that the administrator has acted honestly, prudently, faithfully and discreetly, he is not answerable for any anticipated or actual loss of part of the trust funds except in three instances ; the investment in the bonds of the Union Iron Works Company and the bonds of the Seattle Building Company and the Fai Kee mortgage. The two former investments may have been made on sound business principles, yet they were not made by the administrator personally but by a trusted agent. It is immaterial that the agent be possessed of the highest business capacity, tact and experience. A loss occasioned under such circumstances must be made good by the trustee, and the sum of $2200 loss incurred in the first mentioned investment, and the sum of $2000 in the second must be borne by the administrator because he delegated his functions as trustee to another.

1 Lewin on Trusts, p. 367. Perry on Trusts, Sec. 408, says : "If the trust is of a discretionary nature, the trustee will be responsible for all the mischievous consequences of the delegation, and the exercise of the discretion will be absolutely void in the substitute."

*Pearson vs. Jamison*, 1 McLean, 197.

The duties and powers of trustees cannot be delegated. *Potestas delegata non potest delegari.*

The Fai Kee mortgage was accepted by B. R. Banning as part of the assets distributed to him and was included in the

receipt which was given by him to the administrator. That receipt created no estoppel. The relations between the parties being virtually those of trustee and beneficiary made it obligatory upon the trustee to exercise due diligence in making the investment. The belief, followed by the assertion, of Mr. Allen that the investment was sound, when in fact it was partly of doubtful security does not preclude Banning from seasonably rejecting it when a defect in the title is discovered. It is true that the administrator had offered to pay Banning's share in money which offer was apparently not accepted, Mr. Banning probably electing to take the investments because such course avoided a loss of interest and the trouble of reinvesting the money, yet even that fact does not exonerate the administrator from liability for investing the trust funds in that chattel mortgage. Had Allen known that the leasehold of Fai Kee was only *pour autre vie* he would not have loaned the funds upon that security; if he had loaned it with that knowledge such an investment must have been considered reckless. In this view the administrator is accountable for any loss caused by that investment.

That no false representation was made or improper influence used to obtain the receipt, is clearly shown by the evidence. The conclusion reached by us rests upon the fact that the flaw in the title of the Fai Kee leasehold was one which the administrator easily could and therefore should have discovered.

The computation upon the principles herein enumerated of the commission due the administrator is referred to the clerk of the Court, and when the amount is ascertained, the administrator may credit himself therewith.

The administrator must be charged with the loss on the investment in the Union Iron Works; also with the amount invested in the bonds of the Seattle National Bank Building Company, and with the amount of the Fai Kee mortgage; such conveyances as may be necessary to transfer the securities for the above investments to the administrator to be

executed by the beneficiaries ; in other respects the accounts are approved.

Ordered accordingly.

*A. S. Hartwell* and *W. A. Kinney*, for the beneficiaries.

*F. M. Hatch*, for the administrator.

---

### OPINION OF BICKERTON, J.

I fully concur in the foregoing opinion on all points, with the exception of the one holding the trustee answerable for any loss caused by, or which may arise from, the Fai Kee mortgage investment. It was undoubtedly the duty of the trustee to ascertain the status of the mortgagor's leasehold interest ; this was confessedly neglected by him, and if the said mortgage was now held by him as one of the assets of the remaining half of the estate he would certainly be responsible for any loss arising from it. If it were not for the offer made to Mr. Banning by Mr. Allen giving him the option of receiving his half of the estate in cash, I should not have to dissent on this one point. If the trustee had tendered him his half in coin he would have had to take it. There was nothing to prevent the trustee realizing on enough of the investments to pay Banning his half in cash, but he was given his choice, he decided to select from the securities ; he had, for months, every chance to investigate and examine these investments. Allen had some time previously spoken generally of the investments as being good, but not of any one in particular. There were a number of others to select from ; this one was paying a high rate of interest, viz.: ten (10) per cent. per annum, and that may have been what induced Banning to select it. He was not bound to take it; he had the option of taking any other or even the coin. The trustee did not, under the circumstances, put himself in the position of a guarantor. Mr. Banning was acting with his eyes open and upon his own judgment. It seems to me that at the time Banning selected these securities the relation of

trustee and beneficiary had changed materially. The trustee had offered to do all that could be required of him, viz.: in paying the beneficiary his half of the estate in coin. This offer was not accepted; he, Banning, preferred securities and selected them himself.