# IN THE MATTER OF THE ESTATE OF THOMAS CUMMINS, DECEASED.

### APPEAL FROM DE BOLT, CIRCUIT JUDGE, FIRST CIRCUIT.

### ARGUED OCTOBER 7, 1904.     DECIDED NOVEMBER 7, 1904.

### FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE GEAR IN PLACE OF HATCH, J.

LIFE TENANT—*remainderman, stockholder's right to purchase new shares at par.*

> A stockholder's right to purchase at par new shares issued by a corporation is not "income, profits or gain" of the shares held by him, but belongs to the principal as an incident of its ownership accruing to the remainderman and not to the life tenant or beneficiary, the new shares being issued for payment of corporation debts, following *Carter v. Crehore,* 12 Haw. 309.

TRUSTEE—*liability of, for failure to exercise right of stockholder to buy new shares at par, or to sell such purchase right.*

> A trustee holding shares of the corporate stock of a corporation which has voted to issue new shares in payment of the corporate indebtedness, and to allow shareholders to take a pro rata number of new shares at par, is not required to borrow money on trust securities or use uninvested funds for purchase of the new shares; but is liable for the value of the rights to purchase them, which

rights he released without pecuniary consideration to the life ben-
eficiary, although he acted on legal advice and believing that the
life beneficiary was entitled to the rights. Decision in *Banning*
*Estate*, 9 Haw. 453, followed.

MASTER'S REPORT—*failure to except.*

Rule discussed that master's report presumed correct unless
obvious error in applying the law or serious mistake in considering
the evidence. No occasion to apply the rule in this case.

### OPINION OF THE COURT BY HARTWELL, J.

The question presented by the appellants is concerning the
liability of the trustee for failing to buy for the estate forty
shares of stock of the Wailuku Sugar Company, or to sell for
the benefit of the trust estate the right to purchase those shares
at par, the facts being as follows:

August 10, 1903, the administrator and trustee with the will
annexed of Thomas Cummins, deceased, filed his accounts to
June 30, 1903, before De Bolt, J., of the First Circuit, at
chambers. Thomas Cummins at his death left a will which
was admitted to probate, of which will, omitting the formal
parts, the following is a copy:

"I give, bequeath and devise to the said Alexander J. Cart-
wright Senior, my said executor and trustee, the following real
and personal property, that is to say all my lands and premises
on Kaahumanu street, and King street and twenty (20) shares
in the capital stock of the Wailuku Sugar Company, and also
all the rest, remainder and residue of my real and personal
property or estate of which I shall die seized or possessed or
the owner.

"Subject however to the execution of the following trust,
that is to say

"My said trustee shall control and manage all of the said
trust property, according to his best judgment, for the interest
and advantage of the *cestuis que trust,* hereinafter named

"And shall invest and keep invested all money and stock and
use or dispose of the same and all other personal property and
invest the proceeds as he shall deem best to carry out the trust
herein declared; and keep in good order and repair the build-
ings on said real estate, as he may deem best and rent or use

the same as he may deem best for the purpose of properly performing said trust, and

"First; shall deliver over to my son Thomas Jefferson Cummins, for his sole use and benefit during the term of his natural life, the net income, rents and profits of all my said real estate on Kaahumanu and King streets and of the twenty shares of Wailuku stock aforesaid, as well as the net income of all other property real or personal of which I may die possessed, and

"Second; after the death of my said son, the said Thomas Jefferson Cummins, shall pay and deliver over the said net income, rents and profits to his daughters Lydia, Beatrice and Elizabeth, in equal parts if living, and if either of said daughters shall then be dead, the principal and property, the interest and income of which would otherwise be going to her, shall be paid directly to her lineal heirs, if any, and if none, the said interest and income shall be paid to the survivors equally, and upon the death thereafter of either of the survivors, my said trustee shall pay and deliver over the principal and property, the interest and income of which has theretofore been paid to her, to her lineal heirs, if any and if none such then exist, shall then pay and deliver the same to the collateral heirs of such one dead."

The par value of the shares having been changed after the death of the testator from $500 to $100, the trustee received instead of the 20 shares of the par value of $500 left by the testator, 100 shares of the par value of $100. In 1897 the Wailuku Sugar Company issued 2,000 shares of new stock for payment of its bonded indebtedness to that extent, giving to stockholders the right to buy at par their pro rata number of the new shares. The trustee thereby became entitled to purchase at par forty new shares, and in fact a certificate in his name for those shares was made out on the books of the corporation, but was not delivered to him. The trustee being absent from the Territory at that time, his agent, acting under a general power of attorney not specifically authorizing transaction of trust business, being led to believe that the life beneficiary, the son, was entitled to the benefit of buying the new shares at par, assigned them to the son, who paid $4,000 for them and soon after sold them for $6,000. At the time of the issue of

these new shares the stock was selling at $150 a share; consequently the rights to purchase the 40 shares were worth $2,000.

The trustee's accounts were referred to a master. At some time which does not appear in the papers before us, between the purchase and sale by the son, Thomas, of the 40 new shares and the filing of the trustee's accounts, the son died, leaving J. O. Carter, formerly his agent, as executor under his will. At the hearing before the master Cecil Brown appeared for the petitioner, the trustee, Holmes & Stanley for J. O. Carter, the executor, and M. F. Prosser for Maria (Beatrice) King and Elizabeth Fairchild, two of the daughters of the son Thomas named in the will of the first testator. At a later time Mr. Breckons also appeared for the daughters above mentioned, and Mr. Ballou appeared with Mr. Brown for the trustee.

In the master's first report, after mentioning that "on December 1, 1897, the petitioner appears to have purchased 40 shares in this company at par, being $4,000," and that "on December 28, 1897, within one month from the time of their purchase these identical shares were sold by the beneficiary at an advance of $50 a share, showing a clear gain of $2,000," adds "although the money in this transaction was not the estate's principal, I merely refer to it to see if there is anything in it to mitigate to any extent the surcharges herein made." To this report the Maria King and Elizabeth Fairchild, beneficiaries under the will of the elder Cummins, by their attorney, filed their "objections" for the following reasons:

"That the said trustee has not fully accounted for property of the estate of decedent in that he should now have in his possession as part of said estate, the 40 shares of stock in the Wailuku Sugar Company, referred to on the sixth page of said report. That said 40 shares of stock in said Wailuku Sugar Company were issued to the estate of decedent and were awarded to said Cartwright as trustee of said estate."

At the hearing on this report "the matter of the 40 shares of the stock of the Wailuku Sugar Company" was at Mr. Brown's request referred back to the master, who thereafter reported as follows:

"That on December 1, 1897, a certificate of stock No. 283. for said forty (40) shares, par value of each $100, in the stock of said company, was issued to 'Bruce Cartwright, trustee for T. Cummins.' That immediately thereafter Thomas J. Cummins, *cestui que trust* in this estate, claimed the right to take up those shares as his own property as he had the money and the estate was without funds. That the petitioner, Bruce Cartwright, by W. M. Graham, took legal advice on the point and he was advised that the claim of the *cestui que trust* was good. Thereupon said 40 shares were delivered not by Bruce Cartwright but by the agents C. Brewer & Company, to the said Thomas J. Cummins, through his agent, J. O. Carter who, on December 28, 1897, or within a month from the time said shares were issued, sold them at an advance of $50 a share, thus realizing a clear gain of $2,000. That the amount paid for said 40 shares was $4,000 whereas at this time the principal of this estate was only $3,000 and that amount is now the only principal and no more as reported in the master's main report. That $600 of said principal was previously to December 6, 1897, invested in bonds of the Oahu Railway & Land Company, and they are still at this present time, in the same form. That previous to December 6, 1897, the sum of $2,400 out of said principal was invested in Hawaiian Government bonds, and that the redemption of said bonds did not take place until December 1, 1901. That the principal of this estate, to wit, $3,000, was not available at the time said 40 shares were purchased, to wit, December 6, 1897."

Before any hearing upon the second report, the master filed two more reports containing additional findings of fact which are immaterial to the question presented in this case, except the finding that "there was no delivery other than the endorsement by his attorney in fact made upon the certificate for said shares." His fourth report, filed January 7, 1904, contains the following: "I find that the objections raised by the contestants as to the ownership or accounting for the 40 shares additional in the capital stock of the Wailuku Sugar Company are without merit and should be dismissed." The master in his report gives his views of the law on the subject of the right to purchase the new shares. To this last report of January 7, 1904, the same beneficiaries, Maria King and Elizabeth Fair-

child, filed their "objections and exceptions," stating as reasons therefor that the master's finding "as to the ownership or accounting for the 40 shares additional in the capital stock in the Wailuku Sugar Company, said finding being that the objections of Maria King and Elizabeth Fairchild are without merit and should be dismissed, is contrary to law." After the hearing on these reports the judge filed his decision, which, after passing upon other matters not now in controversy, contains the following: "I also find that the 40 shares of stock in the Wailuku Sugar Company was rightfully purchased by Thomas J. Cummins, the report of the master in that respect being also approved." The order, signed by the judge, in conformity with his decision, after providing for other matters, such as commissions and attorneys' fees, concerning which no question is now presented, contains the following: "The sale of the 40 shares of stock in the Wailuku Sugar Company to Thomas Jefferson Cummins is hereby approved;" and further decrees that the trustee, "upon paying into court the balance shown by his account plus the surcharges and with the allowance made in the order, is discharged and relieved from further liability."

From this order or decree Maria King and Elizabeth Fairchild appealed generally to this court.

The appellants claim that the trustee is chargeable with the 40 shares of new stock, on the ground that they were legally issued to him, or, at any rate, for $2,000, the value of the rights to purchase the shares at par, basing this claim upon the authority of *Carter v. Crehore,* 12 Haw. 309, decided February 27, 1900.

They also claim that the trustee ought to be compelled to account for $5,000, being the difference between the present value of the 40 shares and the $4,000 paid for them.

The trustee claims that the new shares, or the right to purchase them, should be regarded as "income, rents and profits" of the original shares, and as profits belonging to the first life beneficiary, in support of this view citing *Wiltbank's Appeal,* 64 Pa. St. 258, in which the court held that a stockholder's

right to subscribe for stock "is a mere product, a right incidental to the stock and, therefore, income."

The trustee further claims that if he made a mistake in the law, acting as the master found that he did, on the advice of counsel, he is not liable for loss resulting to the estate, citing *During's Appeal,* 13 Pa. St. 224, in which the following language was used by the court: "It is a sound rule in Pennsylvania and perhaps in England, though the decisions are discrepant there, that a trustee who has acted faithfully and by advice of counsel is not responsible for mistakes; the most prudent could do no more. * * * It was well said by the master of the rolls in *Vez v. Emery,* 5 Ves. Jr. 144, that if the trustee in that case had paid by the advice of any counsel in England he would not have held him liable." The following cases are also cited: *Miller v. Proctor,* 20 Ohio St. 442; *Thompson v. Brown,* 4 John. Ch. (N. Y.) 619, 629.

The trustee submits that the equities of the case ought to be controlled by the fact that the owners of the interest in remainder are the three daughters of the life beneficiary, and that they inherited, according to the master's report, "the greater part of the property of the life beneficiary, and therefore presumably the greater part of the proceeds of the right in question, yet they are now seeking to compel the trustee who has received nothing to pay again to them the value of the said right." Other contentions of the trustee are noticed below.

If this court were at liberty to adopt the law upon the subject declared by the Supreme Court of Pennsylvania, apparently the Wiltbank appeal case cited by counsel for the trustee does not state the law as it is now held in that jurisdiction, *Biddle's Appeal,* 99 Pa. St. Rep. 278, holding that where a corporation increases its capital stock by offering to stockholders the option of subscribing at par for the stock in the proportion of one share for every two shares held, the proceeds of a sale of an option by one holding stock in trust to collect the income for the use of another for life are to be accounted capital and not income, in so far as they relate to the beneficiary.

But the decision in *Carter v. Crehore,* in reference to stock dividends, is conclusive in the present case: "The premium upon stock, which represents the increased value of the property or business of the company, is an incident of the corpus and not income from it. If new stock is issued at par, and not as a dividend, the right to take the stock at par represents the premium and is in no sense income or representative of income. It belongs to the holder of the stock, the trustee, for the benefit of all interested in the stock. He may sell the right to take the stock at par and the proceeds will be held for the remaindermen, the income thereof to go to the life tenant." 12 Haw. 326.

It does not follow from the fact that the trustee had the right to buy the new shares at par that it was his duty to do so, either by borrowing money on the trust securities, or by using uninvested trust money in his hands. The will permits him to invest "as he shall deem best," and he is not required by law to select any particular securities for investment; but while the trustee can not be charged with the consequences of failing to buy the new shares, he had no discretionary power or right to relinquish to any one the actual value of the rights or options except on receipt of their actual value, which in this case was $2,000. The first life beneficiary, Thomas J. Cummins, was no more entitled to that benefit than if he had been a stranger to the trust. The trustee, by allowing him to receive that benefit, has allowed the principal of the trust fund to be precisely $2,000 less than it would have been if he had sold those rights for their value, and his liability can not exceed that sum.

The claim of the trustee of the inequity of a decree which enables the appellants to obtain from the trustee the benefit of the profits which their father made on the shares, as well as to obtain to a large extent the same profits under their father's will, as a part of his estate, especially in view of the fact that the trustee did not receive the money, and acted in absolutely good faith in giving their father the chance to buy the shares, is a claim which would have great force if the appellants were the remaindermen, and had come into possession of the estate

upon the determination of the trust. But they are not so. They also are life beneficiaries of the income only. The body of the estate must remain intact for those who under the will shall become entitled to it after the decease of the daughters.

The action of the trustee in releasing these valuable rights, without receiving for the trust estate full pecuniary consideration, renders him liable for the values so relinquished, on precisely the same ground that a trustee would be liable for giving away any portion of a trust estate. Advice of counsel would be no protection in such case, even if it appeared, as it does not appear in this case, that competent and disinterested counsel gave the advice; or that it was given directly to the trustee or his agent, Mr. Graham, and not through J. O. Carter, who represented the interest of T. J. Cummins. It is not legal advice from any counsel, nor is it legal advice in any case which protects a trustee. The only proper advice to this trustee would have been to sell the rights for what they would bring, or to obtain the instructions of the court on the propriety of buying the shares. It appears from the Pennsylvania cases cited for the trustee on this matter of legal advice protecting a trustee, that the law does not enable a trustee to obtain, as it does here, the instructions of the court.

Referring to the cases cited by the trustee's attorney on this point, *Neff's Appeal,* 57 Pa. St. 95, was a case in which an executor had not brought suit on certain promissory notes left by the testator. The court held that the testator was not to be charged for the amount of those notes, since a suit upon them against the maker of the notes "would have broken up his business without producing any fruits." *Chambersburg Saving Fund Assn. Ap.,* 76 *Ib.* 203, was also a case in which the court held that a trustee should not be chargeable for a loss on securities which he had failed to sue upon "in case he has exercised common skill, common prudence and common caution." The court further said that the trustee ought to have communicated to the lawyer on whose advice he acted a certain fact, which he failed to communicate, and that the fact that he acted upon legal

advice without having informed his counsel did not protect him, saying, "his duty clearly required him to ascertain that fact and to communicate it to the lawyer whose opinion he asked. We can not see how any person in the exercise of common prudence and care would have done less." In *Bradley's Appeal,* 89 *Ib.* 514, the court declined to hold trustees liable in relinquishing a certain claim to the proceeds of an execution sale, under a compromise with another execution creditor, in regard to the effect of seizures under their respective writs, the trustees acting in the matter under advice of counsel. In *Miller v. Proctor,* 20 Ohio 442, executors were not held liable for a loss resulting from their taking a mortgage upon partnership property to secure an individual debt of one of the firm. The court held that they were excusable for their ignorance of the law, having "followed the advice of their counsel, a lawyer of large practice and long experience, and who stood high in his profession!"

The general rule prevails in England that advice of counsel will not protect a trustee in making a wrong payment of trust funds. 2 Perry on Trusts,. Sec. 927. The rule is thus stated in re *Knight's Trusts,* 27 Beav. 49: "It is said that the trustee acted upon the advice of counsel. I regret it, but that does not make any difference. In *Doyle v. Blake* it was held that such advice could not exonerate them from the consequences of their acts."

Examination of the cases cited by the trustee's attorneys in their able brief fails to satisfy us that the trustee can be held irresponsible under the showing made in this case, for parting with the value of the rights to buy new shares merely on the ground that he acted on legal advice or in good faith.

The rule laid down in *Banning Estate,* 9 Haw. 453, requires us to hold that the trustee is not exempt from liability for loss merely because he acted in good faith and in the belief that his action was for the interest of the trust estate.

The absence of the trustee from the Territory, when his agent took the course complained of by the appellants, does not exon-

erate the trustee, but rather increases his responsibility. In the case last above cited two of the investments of the trustee "were not made by the administrator personally, but by a trusted agent. It is immaterial that the agent be possessed of the highest business capacity, tact and experience. A loss occasioned under such circumstances must be made good by the trustee." *Ib.* 463.

Our attention is called by the trustee's attorneys to the form of the objection to the master's report made by the appellants, and it is submitted that the only question which this court can consider is that which is presented by that objection; that the form of the objection leaves for this court nothing to pass upon but the question of the ownership of the shares. The point is interesting, for it appears that prior to its present equity rule 83, on the subject of a master's report being confirmed in all respects excepting when exceptions are taken to it, the U. S. Supreme Court held that it was proper practice in equity to require exceptions to a master's report pointing out specifically the errors upon which the party relies. *Story v. Livingston,* 13 Peters 365; *Medsker v. Bonebrake,* 108 U. S. 72; *Sheffield Ry. v. Gordon,* 151 *Ib.* 290.

The rule with its limitations is stated in *Tilghman v. Proctor,* 125 *Ib.* 136, in which the cause had been referred to a master to take testimony and report, which he did, "and the court, after a review of the evidence, concurred in his findings and conclusions. Clearly, then, they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand." *Crawford v. Neal,* 144 *Ib.* 596.

There is no occasion, however, to pass upon the question, since the appellants' exception to the master's finding evidently intends to object to the master's finding on the subject of the trustee's course in regard to the new shares.

The decree appealed from is set aside to the extent required

by this opinion, and the case is remanded to the first judge of the first circuit, with instructions to enter a decree conformably herewith.

*M. F. Prosser, R. W. Breckons* for the appellants.

*Cecil Brown, Ballou & Marx* for the appellee.