# IN THE MATTER OF THE ESTATE OF AUGUSTINE ENOS, DECEASED.

## Appeal from Circuit Judge, Second Circuit.

### Submitted and argued November 14, December 20, 1907. Decided January 17, 1908.

### Hartwell, C.J., Wilder and Ballou, JJ.

Executors and Administrators—*accounts, appeal.*

An order approving partial or annual accounts of an executor or administrator is appealable by coexecutors who appear and object to same.

Id.—*accounts, confusion in.*

Where a will names certain persons as executors and the residue of the property is devised and bequeathed to the same persons in trust, a partial or annual report by one of the executors which confuses the administration and trust accounts should not be approved.

Id.—*accounts, fictitious entries.*

An executor should not include in his accounts fictitious entries of the collection and payment of moneys.

Id.—*accounts, objections to in appellate court.*

On an appeal from an order approving the accounts of an executor matters therein not objected to before the circuit judge may be questioned in the supreme court.

Id.—*accounts, surety premium on bond not allowed.*

A fee of a surety company for the premium on the bond of an executor or administrator is not chargeable to the estate.

Id.—*clerical assistance, counsel fees.*

An executor may charge an estate for clerical assistance and legal services when the necessity therefor and the reasonableness of the amounts are shown.

Id.—*accounts, penalty on tax payments.*

An executor who allows taxes to become overdue cannot charge the estate for the penalty and interest thereon.

Id.—*accounts, investments.*

An investment by an executor is improper in the absence of explanation, and in any event a loan made to himself should not be allowed.

Id.—*commissions.*

Commissions should not be allowed to an executor who is indebted to the estate, nor on moneys not actually received and paid out, nor on payments for expenses of a temporary administrator, nor on any payments not within R. L. Sec. 1890.

OPINION OF THE COURT BY WILDER, J.

This is an appeal by A. Enos and J. V. Maciel, two of the executors of the will of Augustine Enos, deceased, from an order of the circuit judge of the second circuit approving the partial accounts and report of T. B. Lyons from August 21, 1906, to July 31, 1907, as one of the executors and trustees under the will of Enos.

Augustine Enos died testate on March 8, 1906, leaving a large amount of property. His widow, Rosa Enos, his daughter, Rosalie Lyons, wife of T. B. Lyons, and his son, A. Enos, survived him. On March 13, 1906, A. G. Dickens, J. L. Coke and J. M. Vivas were appointed temporary administrators of the estate of the decedent to take charge of the property and carry on the business until the hearing of the petition for the probate of the will, a bond in the sum of $10,000 being required of the first named, the two others to serve without bonds. It may be mentioned that at this time the daughter had given notice that she was going to contest the probate of the will, Mr. Vivas with others appearing for her and Mr. Coke for the executors. This contest was subsequently abandoned. The inventory of the temporary administrators showed property of the value of about $80,000. On April 25, 1906, these temporary administrators were discharged, Mr. Dickens being allowed $350 for his services and Mr. Coke and Mr. Vivas $150 each, and A. Enos, T. B. Lyons and J. V. Maciel were appointed temporary administrators in place of the three discharged, each to file a bond of $10,000. On August 6, 1906,

the temporary administrators filed their final accounts, which were referred to a master, Mr. E. H. Hart, the clerk of the second circuit court, who filed on August 20, 1906, an elaborate report thereon. Among other things the master recommended that the sum of $33.93, penalty and interest on taxes, which the administrators had not paid, be charged to them and be deducted from the amount awarded for their services. On August 20, 1906, the circuit judge approved the accounts as modified by the report of the master, allowed each of the temporary administrators the sum of $100 for his services and a master's fee of $75, and ordered that Morris K. Keohokalole be paid a reasonable amount for his services as accountant and that the temporary administrators be discharged after paying these amounts and delivering over all of the property to the executors and trustees. On the same day the will was admitted to probate and the same three persons, namely, A. Enos, J. V. Maciel and T. B. Lyons, were appointed executors of the will and trustees thereunder, each under a bond of $10,000. The will named Rosa Enos, A. Enos and J. V. Maciel executrix and executors and trustees. After providing for certain legacies and devises the will devised and bequeathed all the rest of the property to the persons named as trustees upon trust to pay quarterly the net income thereof to Rosa Enos or "to permit her to have the use and management of any portion of the same," and after her death to pay one-half of the income to the son and the other half to the daughter subject to various provisions and contingencies. The trustees were given power to manage the property, lease real estate upon certain terms, invest and reinvest money, and purchase real estate. Provision was made for the appointment of a new trustee and also in case one of them should refuse to act. In the inventory filed by Enos and Lyons, two of the executors so called, there appeared two promissory notes of Lyons, both overdue, amounting to $650. Rosa Enos refused to be appointed executrix and declined to act as trustee.

On September 3, 1907, T. B. Lyons, describing himself as one of the executors and trustees under the will, filed a partial report and accounts up to July 31, 1907, charging himself with $22,962.57 and asking to be allowed $21,316.09, leaving a balance on hand of $1646.48. He also filed accounts of transactions between himself and Rosa Enos and further reported the affairs of the estate to be "in a flourishing and satisfactory condition." Enos and Maciel, the two executors, and Rosa Enos, all being represented by Mr. Vivas, filed certain objections to the accounts. The circuit judge then appointed Mr. Hart, the clerk of the court, as master and referred the report and accounts to him for examination. On September 17, 1907, the master filed his report recommending that the accounts be approved with certain modifications and surcharges but finding a balance on hand of $1527.95. The circuit judge disregarded most of the recommendations made by the master, found that the balance on hand was only $1427.95, and approved the accounts. He further ordered that the two objecting executors file their accounts on or before November 1, 1907, that they be allowed access to the books kept by Lyons, and allowed the master a fee of $150 for his services. The master and the circuit judge found that Lyons should have charged several hundred dollars more in commissions, which were allowed him. Enos and Maciel, the two executors, appealed from the order of the circuit judge to this court.

The matter was originally submitted on briefs. Only copies of certain portions of the record were sent up, the vouchers, the will and the proceedings in connection therewith and all matters concerning the temporary administratorship not being certified up. At the request of the court, and with the consent of both the appellants and the appellee, all the original papers and vouchers were forwarded for examination. The court then requested oral argument and further argument as to whether Lyons should be surcharged with certain amounts to which no objection had been made before the circuit judge.

The first question to be determined is the claim of the appellee T. B. Lyons that the appeal should be dismissed on the ground that the order appealed from was not final and that the appellants, the two executors, had no right to appeal in any event. On the latter point we have no doubt that coexecutors have a right to appeal from an order approving the accounts of their coadministrator or coexecutor, and that ground is overruled without further comment.

The other ground is that, as the accounts were only partial or annual and not final, an order approving same is interlocutory only and cannot be appealed from without special leave of the circuit judge, as provided in Sec. 1859 R. L. The practice in this Territory in probate matters is to require periodical accounts from an executor or an administrator if the administration is not completed within about eight months, which ordinarily should be done, (*Estate of Kaiu*, 17 Haw. 514, 515,) and final accounts when the estate is ready to be wound up and the property distributed to those entitled. There is a clear distinction between the annual or periodical and the final accounts. The approval of the one is ex parte and without notice while in the case of the other it can only be made after notice to all concerned. The one is made annually or oftener at the discretion of the judge, the other only when the estate is fully administered. The one is for the information of the judge and the convenience of the administrator or executor in the management of the estate, the other is a final adjudication of the rights and obligations of all concerned. The one is only prima facie correct and is subject to correction for errors or mistakes in it thereafter discovered without an appeal or any direct proceeding to review it or set it aside, (see *Estate of Banning*, 9 Haw. 453, 457), the other is conclusive and final unless set aside on an appeal or a direct proceeding therefor or impeached for fraud. The approval of an annual account, being made without notice to any of the parties interested, is not conclusive as against one who does not ap-.

pear, and in that sense it is not a final order, but, if a party interested does appear and objects and has a hearing on his objections and then appeals, the order is final as to such party, at least in the sense of its being appealable. We are of the opinion, therefore, that the appeal should not be dismissed on the ground that the order appealed from is an interlocutory one.

The first claim of the appellants is that the entire account should be disallowed for the reason that the accounting party has confused and mixed up his duties and transactions as executor and as trustee. This seems to be a valid objection. The will names the same persons as executors and as trustees, the latter being residuary devisees and legatees, but the trustees are only entitled to the property after the administration has fully ceased and the property ordered to be distributed. Some of the confusion may have arisen because the circuit judge sitting in probate appointed these persons as trustees. That was improper and irregular, as a circuit judge sitting in probate as such has no jurisdiction to appoint trustees, (*Long v. Holt,* 18 Haw. 290, 297,) and besides the will in this case specifically provides who shall be the trustees. Furthermore, the probate judge as such has nothing to do with the accounts of the trustees. The case just cited of *Long v. Holl* is an example of how a somewhat similar confusion kept the administration of an estate going unnecessarily for more than forty years. It does not appear from the record why the administration of this estate was not promptly wound up in the usual time unless, as suggested at the argument, there was a suit pending which prevented such action. But, in any event, it should be wound up as soon as possible and the property distributed.

The next objection of the appellants is in effect that T. B. Lyons, the person who makes these accounts as executor, is indebted to the estate in the sum of $650 and interest and that he should pay the same before being allowed commissions.

With this contention we are inclined to agree. It is intimated in the brief of appellee that he has not admitted the claim and that possibly he does not owe it. As pointed out above, however, he swore to it himself in the inventory on file, and it almost looks like trifling with the court to make any such plea.

The third objection is to two items amounting to $800 purporting to have been rental received from the Makawao Ranch, a part of the estate property. It appears that these amounts were not actually received at all, the widow having the use of the ranch, but were inserted in the accounts as having been collected and paid out and commissions charged on same each way. This was clearly improper and should not have been allowed. Even if the ranch was bringing in an actual rental, the executors in this case would have nothing to do with it. In any event, commissions cannot be allowed on the fictitious entries of the collection and payment of moneys.

The court of its own motion requested further argument whether T. B. Lyons, the appellee, should be surcharged with various amounts which the accounts show were paid out and to which no objection was made by appellants. Counsel for the appellee and the appellants both contended that this court was confined to such items in the accounts as were objected to before the circuit judge and this court on appeal. With this proposition we do not agree. The appeal is a general one and from the whole of the order approving the accounts which include, of course, each item thereof. Any part of the order is open to attack in this court by the appellants, and the failure to do so does not deprive this court of its right to question irregularities in the accounts in order to prevent the wasting of estates of decedents, whether accomplished intentionally or otherwise. It is the duty of courts to protect estates irrespective of whether objections are made by any of the parties. *Notley v. Brown,* 16 Haw. 575, 579. If this court for the lack of evidence, or for any other reason, cannot make a final ruling

on any item in the accounts which looks suspicious or improper, at least it can send the matter back for investigation. Therefore, we shall consider all of the matters on which further argument was requested.

After the temporary administratorship was closed and the property delivered over to the executors, $443.35 were paid out for expenses incurred by the temporary administrators. This was made up of $200, fees for the administrators; $75, fee for the master for examining the accounts of the administrators; $50 for clerical assistance to the master; $85 for clerical assistance to the administrators, and $33.35 for a balance of premium due on an administrator's bond. These amounts, if paid at all, should have been paid by the temporary administrators and not left to be dealt with by the executors who, as such, had nothing to do with them. The amount paid for the premium on a bond cannot under any circumstances be allowed. *Estate of Galbraith,* 18 Haw.—The amount of $135 paid for clerical assistance to the master and temporary administrators should be disallowed. We do not understand that under any circumstances an estate should pay for clerical assistance to help a master examine accounts. The amount paid for clerical assistance to the administrators was for making up their accounts, examining account books and reporting on an income tax statement. Recognizing that under certain circumstances clerical assistance for an administrator may be necessary and should be paid for by the estate, still the ordinary clerical work must be performed, or paid for, by the administrator himself. One who becomes an administrator must perform the ordinary work of such or else decline to be appointed. See *McBryde Estate,* 8 Haw. 472. In this case there was no reasonable necessity for employing outside clerical help, and consequently the amount paid therefor is disallowed. We are inclined to allow the other items if they are found to have been necessary and to be reasonable in amount. Commissions should not be

charged on any of these amounts that may subsequently be allowed, either for receiving or paying out the same, as they should have been paid before the executors took hold.

The next item questioned is $35 paid to M. K. Keohokalole for services in assisting the executors in making out an inventory, opening a new set of books and adjusting transfers in the bank. As already pointed out, an executor may be allowed to credit himself with the amount paid out for necessary clerical assistance, but, as held in *Estate of Kaiu,* 17 Haw. 514, an expenditure not shown to have been reasonably necessary will be surcharged. This expenditure, therefore, should not be allowed, as it appears to have been for ordinary clerical work which, as already stated, should be performed or paid for by the administrator personally. The amounts paid to M. K. Keohokalole, in all $170, were objected to before the circuit judge on the ground of being unnecessary.

It appears by vouchers 25 and 26 that $40.23 were paid out for penalty and interest on taxes overdue in May, 1906. These amounts should have been paid by the temporary administrators, and they were surcharged with the amount by the circuit judge on a recommendation of the master in his report on their final accounts, as stated before. Not only were the payments not made by them, but it is now attempted to charge the whole amount to the estate. This is highly improper. The executors should personally pay this amount and they should be surcharged with it. They likewise should receive no commissions for either receiving or paying it out.

The accounts show that on November 30, 1906, a little over three months after the will was probated, Mr. Coke was paid $500 for, as the voucher reads, "fees as attorney for the estate." The rule is that charges for legal services will be allowed when they are necessary. *Estate of Maikai,* 3 Haw. 522. In this case the record does not disclose the necessity for such services, nor even for what they were, and the amount is certainly very high. At the oral argument, in answer to a question from the

bench, Mr. Coke stated that this charge was for past and also for future services without disclosing in any way what such services consisted of. An executor should not be allowed an expenditure for legal services to be rendered in the future. This amount should be disallowed unless it appears that the services were rendered and were necessary and unless also it is shown that the amount is reasonable. If any of it was for services to the temporary administrators, that part should not be allowed.

The executor reports that loans of $5250 were made to several persons, including one of $2600 to himself. These are called investments in the accounts. While we do not say that an executor under no circumstances may invest money which is on hand and not needed for any other purpose, in case a final distribution cannot be made within the usual time, still it is clear that such a procedure should not be allowed without good and sufficient reasons. In this case there appears to be no reason why a partial distribution could not have been had of this amount. It does not appear whether these loans are secured or unsecured, or, if they draw interest, the rate of interest, or the time for which they were made, or anything else about them, as no vouchers for the amounts were filed. So far as the amount of the loan to Lyons himself is concerned, that must be surcharged. No explanation can justify such a proposition. It is almost incredible that such an expenditure should pass unchallenged by both the master and the circuit judge.

An item of $3, which was paid for acknowledgments of a release of a mortgage, is questioned for the reason that no voucher for the same was filed. This amount should be disallowed unless it is sufficiently shown that it was paid, either by producing a voucher or some other satisfactory evidence.

Credit is asked for the payment of $3830 to Rosa Enos, the widow. This can only be allowed on the theory of a partial distribution, that is, that it has been finally distributed to the trustees who are the residuary devisees and legatees. If such

a theory cannot be followed out, the whole amount will have to be surcharged for the reason that the will provides to 'whom the balance of the property remaining after the payment of debts, legacies and expenses shall be delivered, namely, the trustees.

. It is obvious that the commissions will have to be readjusted, which should be strictly figured out in accordance with Sec. 1890 R. L., and which may be reduced for neglect of duties. *Estate of Alima,* 13 Haw. 388.

There is another matter which should be noticed. Mr. Lyons was appointed by the circuit judge as one of the executors in place of Rosa Enos, named by the testator as executrix, who refused to act. An executor is one who is named by the testator to carry out the provisions of the will. As Lyons was not so named, he should be regarded, if properly appointed anything, as an administrator with the will annexed to act with the two executors named in the will.

The record is not sufficient for this court to pass intelligently upon all of the items in the accounts as they stand and, consequently, the whole matter will have to be referred back to the circuit judge to proceed in accordance with this opinion.

The order appealed from is reversed and the cause is remanded to the circuit judge for further proceedings consistent with this opinion.

*E. M. Watson* and *J. L. Coke* for T. B. Lyons, appellee.

*C. H. Olson,* (*Holmes & Stanley* and *J. M. Vivas* with him on the brief,) for J. V. Maciel and A. Enos, appellants.