# W. C. McGONAGLE, AS TREASURER AND BANK EXAMINER FOR THE TERRITORY OF HAWAII, v. UNION TRUST COMPANY, LIMITED.

## No. 2440.

SUBMITTED APRIL 10, 1940.  DECIDED JUNE 21, 1940.

COKE, C. J., PETERS AND KEMP, JJ.

*Per Curiam.* This is an appeal by Antonio Perry, Esquire, Charles S. Davis, Esquire, Samuel Landau, Esquire, and the law firm of Smith, Wild, Beebe & Cades from an order fixing attorneys' fees to be paid them entered in the matter of the receivership of Union Trust Company, Limited.

In April, 1938, proceedings were instituted by W. C. McGonagle, territorial treasurer and bank examiner, against Union Trust Company, Limited, which resulted in the appointment of a receiver of its properties. In April, 1939, the receiver filed a petition for allowance of claims, adjudication of priorities and for an order of partial payment of obligations. In his said petition the receiver listed all unpaid accounts against the company. The accounts were listed by the receiver in nine groups and classified as preferred or general, as follows:

| Group Nos. | Preferred | General |
|---|---|---|
| 1 | $2,165.26 | $     213.95 |
| 2 | ........ | 160,418.50 |
| 3 | ........ | 420,356.28 |
| 4 | ........ | 93,965.74 |
| 5 | ........ | 40,538.10 |
| 6 | ........ | 14,623.57 |

| | | |
|---|---|---|
| 7 | 6,972.95 | -------- |
| 8 | -------- | 50.25 |
| 9 | -------- | 7,760.52 |
| Totals: | $9,138.21 | $737,926.91 |

All claimants were notified of the filing of the petition and the date of hearing. .There were approximately 875 claimants listed by the receiver. Some of those whose claims were not listed in the preferred class by the receiver protested the classification and employed attorneys to represent them. After a trial which consumed about forty hours of time in court, at some nineteen different sessions interspersed over a period of about six months, the circuit judge approved claims totaling approximately $747,000 and classified them under the provisions of section 6919, R. L. H. 1935, as follows:

| Group Nos. | Preferred | General |
|---|---|---|
| 1 | $ 2,165.26 | $ 213.95 |
| 2 | 160,418.50 | -------- |
| 3 | 420,356.28 | -------- |
| 4 | 9,819.02 | 84,146.72 |
| 5 | 5,733.78 | 34,804.32 |
| 6 | 14,623.57 | -------- |
| 7 | 6,972.95 | -------- |
| 8 | -------- | 50.25 |
| 9 | 2,047.50 | 5,713.02 |
| Totals: | $622,136.86 | $124,928.26 |

Of the $747,000 of accounts allowed by the decree, the holders of little more than $184,000 thereof were represented by counsel at the hearings on the petition. It was stipulated and ordered at the commencement of the hearing that holders of accounts who were not represented by counsel would be treated in the same way as

the holders of similar accounts who were represented by counsel, although no claimant purported to act for others and no formal order was entered authorizing any one of more claimants to represent others in the same class. In some cases a litigant avowedly sues for himself and others similarly situated. In other cases the litigant recovers or preserves a fund for the members of a class though he did not profess to be their representative. In either case it is equitable for the proper expense of the litigation to be charged against the fund recovered or preserved. (*Sprague* v. *Ticonic Bank*, 307 U. S. 161.) After the accounts were allowed and classified petitions were then filed by the various attorneys who represented claimants for the allowance of fees for their services, to be paid by the receiver out of funds in his hands for distribution to all claimants benefited. At the request of the circuit judge each petition was supported by affidavit of the attorney filing it, setting forth the services rendered, the results achieved and an estimate of the value of his services. No other evidence in support of the petitions was produced. The circuit judge concluded that under the circumstances of the case the fees should be kept at the minimum. From his experience at the bar and as circuit judge, he found $25 per session of two hours, including time spent in preparation, to be the minimum. He further found that Judge C. S. Davis had "carried the laboring oar" for those protesting the receiver's classification of claims and allowed him 50% more per session than the minimum. The attorneys, number of sessions attended, fee claimed and fee allowed follow:

| Attorneys | Sessions | Fee Claimed | Fee Allowed |
|---|---|---|---|
| C. S. Davis, | 19 | $7,500.00 | $ 712.50 |
| Antonio Perry, | 18 | 1,500.00 | 450.00 |

| | | | |
|---|---|---|---|
| Samuel Landau, | 15 | 3,000.00 | 375.00 |
| George Nowell, | 18 | 1,500.00 | 450.00 |
| Smith, Wild, Beebe & Cades, | 19 | 2,000.00 | 475.00 |
| Stanley, Vitousek, Pratt & Winn, | 17 | 1,500.00 | 425.00 |
| Robertson, Castle & Anthony, | 6 | not less than 100.00 | 150.00 |
| Henshaw & Ouderkirk, | 13 | 500.00 | 325.00 |
| Thompson & Russell, | 6 | discretion of court | 150.00 |
| | | | $3,512.50 |

The circuit judge took into consideration the results achieved by the group of attorneys, not only for the claimants who employed them but for the classes of claimants found to be entitled to a preference, and concluded that it was questionable whether or not as much as $30,000 was involved.

At the hearing the receiver testified that he expected to have available for the payment of claims approximately $706,000. Had his classification of the claims been accepted, and assuming that his estimate of the assets is accurate, the result would have been:

| | |
|---|---|
| Claims allowed, | $747,065.00 |
| Preferred claims, | 9,138.00 |
| General claims, | 737,927.00 |
| Amount available for payment of general claims, $706,000 less $9,138, | 696,862.00 |
| Estimated loss, | $ 41,065.00 |

The receiver admitted that his estimate of the assets might be erroneous, 10% either way. If his estimate of their value was 10% too high, the result would have been:

| | |
|---|---|
| General claims, | $737,927.00 |
| Amount available for payment of general claims, $706,000 less $70,600, less $9,138, | 626,262.00 |
| Estimated loss, | $111,665.00 |

If the assets should exceed the receiver's estimate by $41,065, or about 6%, both preferred and general creditors will be paid in full. With the possibility that the classes represented would, if the receiver's classification was accepted, sustain a loss which might exceed $100,000 or might be reduced to nothing, we think the circuit judge underestimated the importance of the litigation to the classes benefited.

Due to irregularities in the conduct of the business of the trust company prior to the appointment of the receiver, a complicated state of facts had to be evidenced to enable the court to classify the claims. This took time. The circuit judge seemed to think that much of the time was wasted but did not say who was responsible.

Upon the record before us, considering the ability and standing of the respective attorneys, the nature and importance of the cause, the time and labor actually expended, the amount substantially involved and the results achieved, we believe that the fair and reasonable aggregate value of the professional services rendered by all the attorneys representing the claimants in the instant case was and is the sum of $5000. The allowances made them by the trial judge, from which this appeal has been prosecuted, were therefore inadequate. Such inadequacy was no doubt induced by his misconception of the evidence as to the amount of the benefits secured and the necessary time consumed. The five attorneys who did not appeal were allowed fees aggregating $1500. Deducting this from the $5000 leaves $3500 for the four who appealed.

We see no reason for disturbing the conclusion that Judge Davis should have 50% more than other attorneys. The $3500 allowed the four appellants will therefore be allocated on that basis.

At the risk of unduly extending this opinion, we call attention to the importance of fixing only one fee for services in such a case as this, regardless of the number of attorneys involved. The matter of allocating portions thereof to the various attorneys should be governed by the circumstances or may be left to the attorneys involved if the circumstances warrant that procedure. Any attempt to allow each attorney an adequate fee based on the number of court hearings and the time spent in preparation, where a large number of attorneys are to be paid out of a fund recovered or preserved, is bound to result in casting too great a burden upon parties who did not employ them. Counsel should realize the likely consequences of such a situation at the outset of such litigation as this and take steps to have class representation formally established.

We have been handicapped in our consideration of this case by only one side of the question of the adequacy of the fees allowed being represented. Counsel for the receiver did not discuss that question. We have, however, felt it to be our duty to protect the interest of the large number of holders of small claims out of which the fees allowed are to be paid. The principles which have governed us are well set forth in the cases to which we now refer.

In *Folts* v. *Globe Life Ins. Co.,* 119 Neb. 143, 227 N. W. 455, eight attorneys conducted the litigation in behalf of Folts and another member of Sovereign Camp, Woodmen of the World (herein referred to as W. O. W.), against the Globe Insurance Company and W. O. W., to compel Globe Insurance Company to restore to the treasurer of

W. O. W. assets of the value of $1,700,000 which had been fraudulently transferred to it by the directors of W. O. W. Complete restoration was achieved. The trial court ordered the W. O. W. to pay to the clients of the eight attorneys $60,000 with which to compensate their attorneys without prescribing how it was to be divided among them. Both the W. O. W. and the clients of the attorneys appealed. W. O. W. contended that no fee should have been allowed. The plaintiffs contended that the fee allowed was inadequate. On appeal the propriety of the allowance was sustained but the allowance was reduced to $50,000. In *Shively* v. *Daviess County Bank & Trust Co.,* 144 Ky. 299, 300, 302, 137 S. W. 1086, the bank made an assignment for the benefit of its creditors. Some of the depositors held ordinary certificates of deposit while others held what were called "mortgage certificates of deposit," amounting to $73,463. The assignee having filed an action for the settlement of accounts of the bank, Rembold and Smith, two holders of mortgage certificates, filed their petition in the action for the settlement of accounts and sought to have the court adjudge the owners of mortgage certificates preferred creditors. Shively and Corley, two unsecured creditors, answered the petition for preference and Sinnett and Wilson, two other unsecured creditors, demurred to the same petition. Shively and Corley were represented by two attorneys and Sinnett and Wilson by one attorney. Upon the filing of the answer, the court entered an order permitting Shively and Corley to defend for all unsecured creditors not represented by attorneys of record. The demurrer of Sinnett and Wilson was sustained. Thereafter Edward Franke, another holder of a mortgage certificate, filed an action for himself and all other holders of such certificates, seeking to have such holders adjudged preferred creditors. Sinnett and Wilson filed a petition asking to be made

parties. They were made parties and were authorized by order of court to defend for all unsecured creditors. Thereupon they demurred to Franke's petition and their demurrer was sustained. An amended petition was then filed by Rembold and Smith for preference, to which Sinnett and Wilson demurred. The demurrer was sustained. Rembold and Smith then filed a second amended petition, to which Sinnett and Wilson demurred. Before action on this demurrer the assignee filed a report to the effect that the holders of mortgage certificates were entitled to a preference and that they had a prior lien on the notes secured by mortgage held by the bank. Sinnett and Wilson filed exceptions to the report and their exceptions were sustained. On final hearing the petitions of Rembold and Smith and of Franke were dismissed and they appealed. After affirmance of the order dismissing the petitions, Shively and Corley and Sinnett and Wilson moved the court to make their attorneys an allowance of $5000 as their fee for services in the action, to be paid out of the funds going to the general creditors not represented by other attorneys. In support of the motion, affidavits of several attorneys, including opposing counsel, were filed. All agreed that $5000 was a reasonable fee. The court allowed them $1500, to be divided equally among the three attorneys. Shively and Corley and Sinnett and Wilson and their attorneys appealed. In affirming the award, the court said:

"That appellants' attorneys were active and vigilant in representing their clients and the other unsecured creditors, there can be no doubt still, the facts were practically admitted, and there was left for determination simply a question of law. The chancellor is not bound by evidence of the value of legal services rendered in his court. No one is in a better position to determine the value of such services than he. He may, of course, properly defer

to the judgment of reputable attorneys as to the size of a fee he should allow in a pending case but, after all, their judgment is not conclusive. It is true, in this case no objection to the fee was interposed; but, it was still the duty of the chancellor to protect those interested in the assigned estate. While $74,000 seems a large sum for the attorneys to have secured for the benefit of the general creditors, it must be remembered that this sum does not represent, accurately, the amount involved; because, had the holders of the mortgage certificates obtained a preference, the amount of the liabilities payable out of the general fund would have been decreased to that extent.

"When we consider the case from this standpoint, and from the further standpoint that practically the only question involved was one of law, and that the chancellor knew exactly what services the attorneys performed, we are not inclined to reverse his finding as to the amount. Nor do we see any reason why his finding as to the method of distribution should be disturbed. In a case like this, we think the fee should be divided, not on the basis of the number of attorneys employed by any particular party, but on the basis of the services rendered by each. As to the amount of work done by each attorney, no one is in a better position to know than the chancellor, and in the absence of evidence tending to show a disparity in the amount of the work performed, we see no reason why the fee should not be divided as the chancellor directed."

The order appealed from is reversed, with instructions to enter an order in conformity herewith.

*A. Perry*; *Smith, Wild, Beebe & Cades*; *C. S. Davis* and *S. Landau*, appellants in person.

*Anderson, Marx, Wrenn & Jenks* for receiver.